Middleton *v.* Middleton.

BENJAMIN MIDDLETON, appellant,

*v.*

ELLEN J. MIDDLETON, respondent.

1. An act permitting a limited divorce for adultery or desertion, attended by special consequences with regard to property rights, on the application of a person holding conscientious scruples against absolute divorce, and not otherwise, is contrary to the spirit of the constitution of this state and of the United States.

2. A classification defined only by inquiry into the private opinions of an offended party is not such as the principles of constitutional construction will sustain.

On appeal from a decree advised by Vice-Chancellor Pitney, who delivered the following conclusions:

The husband, the complainant, sues his wife, the defendant, for a divorce from the bonds of matrimony, on the ground of desertion by her for the statutory period.

By her answer she admits the desertion and justifies it on the ground of extreme cruelty, and, by her cross-bill, asks for a decree of divorce from bed and board, with a provision for her separate support and maintenance on the same ground.

The cause was tried upon this issue, viz., cruelty, until near its close, all parties being apparently ignorant of the act of March 4th, 1891 (*P. L. of 1891 p. 76*), which provides that a party who has conscientious scruples against applying for a divorce from the bonds of matrimony may have the relief of divorce from bed and board for the cause of adultery.

Middleton v. Middleton.

After the issue above stated had been tried, the defendant applied for and obtained leave to amend her cross-bill by inserting an allegation of adultery.

The answer and cross-bill, as originally framed, contained incidental charges of adultery by the complainant with a woman named Spothelfer, and it was frankly admitted by the complainant, in his answer and during the hearing, that he had maintained illicit relations with this woman during the greater part of the period that he was living with the defendant as his wife, and that he had had two children by her. The amendment allowed alleges adulterous intercourse with a Mrs. Gilbert after the defendant had finally left the complainant, which was in the fall of the year 1890.

This state of the pleadings resulted in the following issues being tried:

*First.* Did the complainant treat the defendant with such extreme cruelty as justified her in leaving him in the fall of 1890, and entitle her to a separate maintenance?

*Second.* Had the complainant been guilty of adultery with the woman Spothelfer, which was not condoned by his wife by voluntary connubial intercourse?

*Third.* Did he have adulterous intercourse with Mrs. Gilbert?

The vice-chancellor, after discussing the evidence, found in favor of the complainant in the cross-bill on all these issues. It seems that the constitutionality of the act of 1891, above referred to, was not raised or in any way discussed in the court below.

Thereupon, a decree was made, which adjudged as follows:

"That the complainant's bill be and the same is hereby dismissed, and the said chancellor, by virtue of the power and authority of this court and of the statute in such case made and provided, doth hereby further order, adjudge and decree that the said complainant and defendant be divorced from bed and board forever; provided, however, that the said parties may, at any time hereafter, by their joint petition, apply to this court to have this decree modified or discharged.

"And it is further ordered, adjudged and decreed that the said complainant, Benjamin Middleton, forfeit all right to curtesy and administration of or participation in the property or estate of the said defendant, Ellen J. Middleton.

"And it is further ordered, adjudged and decreed that the said complainant

Middleton *v.* Middleton.

pay to the said defendant the sum of $7 per week, at the termination of each and every week, from the date of this decree, for her support and maintenance.

"And it is further ordered, adjudged and decreed that this decree shall, from the date thereof, be a lien upon the personal and real estate of said complainant in the State of New Jersey, and that a copy thereof shall be forthwith served upon the said complainant or his solicitor, and that either party be at liberty to apply upon a future change of circumstances in the parties, or either of them, for such variation or modification of this order or decree touching the said allowance for alimony and maintenance, as such future circumstances may dictate to be just and equitable."

From that decree the complainant has taken the appeal now before this court. This appeal has been twice argued here, the second time by order of the court upon the question of the constitutionality of the act of the legislature referred to in the vice-chancellor's conclusions.

*Mr. John J. Crandall*, for the appellant.

*Mr. Samuel K. Robbins*, for the respondent.

The opinion of the court was delivered by

BARKALOW, J.

The principal and governing question in this case is the constitutionality of the act of March 4th, 1891, which provides that

"for desertion, adultery or extreme cruelty in either of the parties, the court of chancery may decree a divorce from bed and board forever thereafter, or in the case of extreme cruelty for a limited time, as shall seem just and reasonable; but in every such case, except for extreme cruelty, the party applying shall prove that he or she has conscientious scruples against applying for a divorce from the bond of matrimony; when such proof has been made, the court, in case it shall deem it just to do so, may also decree that the guilty party shall forfeit all right to dower, curtesy and administration of or participation in the property or estate of the party in whose favor the decree is entered."

The wisdom of this enactment is not a question for the court. The legality of it is all that we are to determine.

In this state both parties in the case of a divorce from the

bond of matrimony may marry again; in the case of a limited divorce neither can.

The parties to a marriage contract, whoever they may be and whatever their opinions or beliefs, have, in all cases, until the passage of the law under consideration, incurred the same obligations and acquired the same rights.

The legislature may prescribe those rights and obligations, but it must do so within the limits fixed by the constitution of this state and of the United States; and those limits are to be ascertained by reference to the language of those instruments and to the spirit indicated by their expressions.

It cannot be denied that the legislature has power to pass an act giving to all petitioners for divorce the right to apply for an absolute or a limited divorce as each may elect; for such an act would operate equally upon all persons and would impose no special consequence and confer no exclusive privilege upon any.

The act of 1891 is, however, not of this character, in that it does confer upon certain petitioners rights and impose upon certain offenders consequences not shared by all and which are determined not by the character of the offence, but by the opinions of the injured party.

While it is not declared that the constitution of this state, in terms, prohibits such legislation, it seems clear that this law is contrary to the whole spirit of that instrument.

It is therein provided that "no person shall be denied the enjoyment of any civil right merely on account of his religious principles," and surely the spirit of that provision cannot permit the religious or moral scruples of another person to deny to an offender, however culpable, the right to remarry after his offence, by reserving for him a form of divorce not applicable to other wrongdoers of the same kind, and one, too, which carries with it a special possibility in relation to property.

The constitution of the United States forbids any state to "deny to any person within its jurisdiction the equal protection of the laws," and it certainly seems to be a true construction of that prohibition to hold that the laws which are operative should be laws which impress themselves equally upon all without regard to the individual opinions of any.

Accepted authorities, in treating of constitutional limitations, have laid it down that    .

"a statute would not be constitutional  *  *  *  which would select individuals from a class  *  *  *  and subject them to peculiar rules or impose upon them special obligations or burdens from which others in the same class are exempt." *Cooley Const. Lim.* (*5th ed.*) *391,*

and the case of *Ho Ah Kow* v. *Nunan, 5 Sawy. 552, 562,* sustains this doctrine.

The law under consideration selects individuals from a class of married offenders and subjects them to "peculiar rules" and imposes upon them "special burdens." It singles out those whose consorts happen to hold certain scruples, subjects them to a peculiar rule of accountability and imposes upon them consequences from which all other equal offenders are free.

Where a different result is provided for dereliction on the part of one person from that which is attached to the same dereliction on the part of another, there is a discrimination applied to that offender which is contrary to the spirit of the constitution of this state and of the United States.

Such discrimination can only, if at all, escape from that position of repugnance, by being made to apply to a class so large, so consciously entered into and so certainly defined that the classification is either originally patent or deliberately accepted by the members of it.    .    .

A class which is only to be ascertained by inquiry into the private opinions of another than the person operated upon by the discrimination, does not seem to be such as the principles of constitutional construction can approve.

A law which imposes upon one person a kind of divorce which for the same offence it cannot apply to another, because the consort of the former holds certain opinions which the consort of the latter does not, is a law which does not classify in conformity with the requirements just enumerated ; and the fact that the person who suffers from such discrimination is an offender does not change the character of such legislation nor justify an infraction of constitutional principles.    .

Middleton v. Middleton.

The classifications which have been sustained by the courts of this state, in the interpretation of the laws concerning taxes, have been defined by political or municipal lines of boundary or population, and not by the existence of opinions or beliefs.

The law of this state which permits an affirmation instead of an oath acts only upon the person himself who holds the scruple provided for, and is matter of indifference to all others, since the conscience of the one who affirms is bound.

The Sunday laws constitute no precedent contradictory to the views here expressed, for they operate upon all alike.

No law other than this under consideration appears upon our statute book which allows an individual to be judicially dealt with in conformity to the private opinions of another individual.

Upon all of these considerations, we are of opinion that the act in question is unconstitutional.

The decree below should be reversed so far as it decrees forfeiture of curtesy and of right to administration of or participation in the property of the respondent, as authorized by the act of 1891 ; and should be affirmed so far as it allows a limited divorce for extreme cruelty under the general laws concerning divorce. *Rev. p. 315 § 5.*

Dixon, J.

The husband filed a bill in the court of chancery, praying a divorce *a vineulo,* because of desertion by his wife. The wife answered, denying the desertion, and, by way of cross-bill, she charged her husband with extreme cruelty, and for that cause prayed a divorce *a mensa et thoro,* with alimony. Subsequently she amended her cross-bill by adding a charge of adultery, but she did not alter her prayer. On trial before a vice-chancellor, he found that the wife was not guilty of desertion, and that the husband was guilty both of extreme cruelty and of adultery, and thereupon a decree was made that the parties be divorced *a mensa et thoro* forever, that the wife should have alimony, and that the husband should, under the act of March 4th, 1891 (*Gen. Stat. p. 1274*), forfeit his right of curtesy.

I agree with the vice-chancellor that the testimony proves the

extreme cruelty of the husband and does not prove desertion by the wife, and therefore think the decree for divorce and alimony is right. The decree for forfeiture of curtesy cannot, I think, be supported, for the reason that it is not embraced within the prayer of the cross-bill. It is, therefore, in my judgment, unnecessary to consider the evidence of adultery or to pass upon the constitutionality of the act of March 4th, 1891, for whatever conclusion I might reach on those matters, my determination as to this decree must remain the same. Hence, I decline to vote upon the constitutional question.

At the request of three members of the court, the vote was taken separately on these questions, viz. :

1. Is the act entitled "A supplement to an act entitled 'An act concerning divorces' (Revision), approved March 27th, 1874," which supplement was approved March 4th, 1891 (*Gen. Stat. p. 1274*), unconstitutional?

*Affirmative*—DEPUE, LIPPINCOTT, LUDLOW, MAGIE, VAN SYCKEL, BARKALOW, BOGERT, NIXON—8.

*Negative*—GUMMERE, HENDRICKSON—2.

2. Shall the decree, so far as it grants a divorce from bed and board forever, and alimony, be reversed?

*For affirmance*—DEPUE, DIXON, GUMMERE, LIPPINCOTT, LUDLOW, MAGIE, VAN SYCKEL, BARKALOW, BOGERT, HENDRICKSON, NIXON—11.

*For reversal*—None.

3. Shall the decree, so far as it decrees that the appellant shall forfeit all rights to curtesy and administration of or participation in the property or estate of the respondent, be reversed?

The vote being on the question of affirmance or reversal of that part of the decree—

*For reversal*—DEPUE, DIXON, LIPPINCOTT, LUDLOW, MAGIE, VAN SYCKEL, BOGERT, DAYTON, HENDRICKSON, NIXON—10.

*For affirmance*—GUMMERE—1.